UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| KRISTINA L. HEINTZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:11-cv-263<br><br>Honorable Joseph G. Scoville<br><br><br>**OPINION** |

      This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB).  On July 26, 2007, plaintiff filed her application for benefits alleging a December 18, 2005 onset of disability.  (A.R. 118-20).  Her claim was denied on initial review.  On December 7, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel.  (A.R. 20-50).  On January 29, 2010, the ALJ issued a decision finding that plaintiff was not disabled.  (A.R. 56-65).  On January 14, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

      Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment.  (docket # 12).  Plaintiff asks the court to overturn the Commissioner's decision on the following grounds:

  1.  The ALJ erred by failing to weigh the opinion of Ms. Heintz's treating psychiatrist;

  2.  The ALJ erred in failing to consider all of the evidence; and

  3.  The ALJ erred "by calculating a residual functional capacity for Ms. Heintz that did not reflect all of Ms. Heintz's limitations."

(Plf. Brief at 1, docket # 15). Upon review, the Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, No. 11-2304, __ F.3d __, 2012 WL 3871353, at * 4 (6th Cir. Sept. 7, 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73.

"If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on December 18, 2005, her alleged onset of disability, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 58). Plaintiff had not engaged in substantial gainful activity on or after December 18, 2005. (A.R. 58). Plaintiff had the following severe impairments: "headaches, degenerative disc disease, depression, bipolar disorder and panic disorder without agoraphobia." (A.R. 58). The ALJ determined that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 58). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the

> following limitations: push/pull (upper extremities) is limited to occasional; climbing ladders, ropes and scaffolds is occasional; climbing ramps or stairs, balancing, stooping, crouching, kneeling and crawling are frequent; she needs to avoid concentrated exposure to excessive vibration and all exposures to machinery and unprotected heights; sit/stand option; overhead reaching, handling and fingering are all occasional; work limited to simple, routine, repetitive and allowed off-task 5% of the time.

(A.R. 60). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 60-64). Plaintiff was unable to perform her past relevant work. (A.R. 64). She was 41-years-old as of the date of her alleged onset of disability and 45-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 64). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 64). The ALJ found that the transferability of work skills was not material to a determination of disability. (A.R. 64). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 20,550 jobs in the State of Michigan that the hypothetical person would be capable of performing. (A.R. 46-49). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (A.R. 64-65).

**1.**

Plaintiff argues that the ALJ erred "by failing to weigh" the opinion of Ms. Heintz's treating psychiatrist: Ahmad Zubairi, M.D. (Plf. Brief at 12-16). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating

physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v.*

*Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Rabbers v. Commissioner*, 582 F.3d 647, 657 (6th Cir. 2009).

Dr. Zubairi did not have any consulting, examining, or treating relationship with plaintiff until years after her alleged onset of disability. Plaintiff claims an onset of disability of December 18, 2005, stemming from her Florida workplace injury. She was off work for a few days, then returned to work with restrictions. She moved to Wisconsin in June 2006. (A.R. 30). She received worker's compensation until June 2007. In June 2007, she went to work part time, but lost

that job because of her absenteeism. In 2008, she was fired from her job at "Pick N Save" for stealing $8,000 in gift cards. (A.R. 32).

Plaintiff moved to Michigan in late August 2008. (A.R. 23). On August 31, 2008, she attempted suicide by overdosing on Cymbalta, Lexapro, and Seroquel.[1] She was experiencing legal, financial, and marital problems. She and her husband had recently separated and planned to file for divorce. (A.R. 899). She had falsified three credit card applications using another person's social security number and racked up $18,000 of debt that she was unable to repay. (A.R. 899). The store owner was pressing charges for her $8,000 theft of gift cards. (A.R. 32). On September 12, 2008, her diagnosis was as follows:

| | | |
|---|---|---|
| Axis I: | | Bipolar disorder, type II, most recent episode depressed, panic disorder without agoraphobia, and pain disorder; |
| Axis II: | | Rule out borderline personality disorder; |
| Axis III: | | Chronic neck pain, headaches, hypothyroidism, bronchitis; |
| Axis IV: | | Possible legal problems, recent separation, financial problems; |
| Axis V: | | Global assessment of functioning score on discharge, 65-70. |

(A.R. 900). The discharge summary indicated that plaintiff would be meeting with a therapist at the Allegiance Outpatient Clinic in Jackson, Michigan (Allegiance) in September, and that she would see Dr. Zubairi on October 6, 2008. (A.R. 900).

Plaintiff met with an Allegiance social worker on several occasions. (A.R. 918, 920-33). It is unclear whether she kept her October 2008 appointment with Dr. Zubairi. If she did, the

---

[1] Plaintiff stated that alcohol was also involved (A.R. 38, 899) and an empty bottle was found in her motel room (A.R. 773), but no alcohol was detected in her system (A.R. 760, 773). Her suicide attempt was thwarted after she placed a telephone call to her boyfriend and he obtained medical assistance. (A.R. 38).

progress notes were omitted from the record. Plaintiff met with Dr. Zubairi for "medication management" on two occasions: December 15, 2008 (A.R. 923) and January 19, 2009 (A.R. 919). Thus, the ALJ gave plaintiff the benefit of a doubt when he considered Dr. Zubairi's opinions as those of a treating physician. *See Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006) ("[T]wo or three visits often will not suffice for an ongoing treatment relationship."); *see also Torres v. Commissioner*, No. 11-3981, 2012 WL 3089334, at * 4 n.2 (6th Cir. July 31, 2012).

On March 2, 2009, Dr. Zubairi completed a psychiatric review technique form. He stated that plaintiff's impairments were severe, but they were not expected to last 12 months. (A.R. 593). He stated that plaintiff had an organic mental disorder, affective disorder, and an anxiety disorder. (A.R. 594-98). He offered an opinion that plaintiff's mental impairment met the part B criteria of listing 12.04: "marked" restrictions in activities of daily living, difficulties in maintaining social functioning, and one or two episodes of decompensation. (A.R. 963). Dr. Zubairi's opinion that plaintiff met or equaled the requirements of listed impairments was entitled to no weight because it is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3). The ALJ noted that Dr. Zubairi gave no rationale for his conclusion that plaintiff had "marked" limitations. (A.R. 63). Further, because plaintiff's condition was not expected to last 12 months (A.R. 63), it fell short of the Social Security Act's durational requirement for disability. *See* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); *Harley v. Commissioner*, No. 11-5640, 2012 WL 2380372, at * 1 (6th Cir. June 25, 2012). The ALJ found that in addition to a treatment relationship of relatively short duration, the functional limitations assigned by Dr. Zubairi were not consistent with the claimant's activities, including her ability to drive,

engage in part-time employment until being fired for theft, and maintaining a relationship with her new boyfriend. (A.R. 63). The court finds no violation of the treating physician rule, and that the ALJ complied with the procedural requirement of providing good reasons for the weight he gave to Dr. Zubairi's opinions.

**2.**

Plaintiff argues that the ALJ "fail[ed] to consider all of the evidence" because his opinion does not include discussion of a letter signed on December 24, 2007, by Paul Zuzick, M.D., and the results of the consultative psychiatric examination Gary Hauser, M.D., performed on June 24, 2008. (Plf. Brief at 16-17). This administrative record spans more than a thousand pages. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *accord Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010).

A.  Dr. Zuzick

The ALJ considered plaintiff's medical records from the Aurora Wilkinson Medical Clinic in Oconomowoc, Wisconsin (Exhibit 6F, 16F, A.R. 487-521, 666-86), Dr. Zuzick's place of employment. (A.R. 62, 63). Plaintiff saw Dr. Zuzick on several occasions in 2007. (A.R. 490-99, 672-75). During these visits plaintiff reported knee, neck, and back pain, tension headaches, depression, sleep disturbance, and anxiety. She did not disclose her criminal activity. Based on the symptoms plaintiff reported, Dr. Zuzick gave her prescriptions for several different medications. (*Id.*).

On December 24, 2007, Dr. Zuzick wrote the following letter:

> To Whom It May Concern:
>
> I am writing on behalf of Kristina Heintz who is a patient of mine. She had a work related injury in 12/2005 and is now suffering from chronic pain issues related to that. She is under the care of [a] pain management physician for this. Because of the ongoing pain she has been having, she has suffered from severe anxiety with depression which I am actively treating. The combination of the pain issues she has been experiencing along with the depression and anxiety would be considered severe, therefore, I have recommended that she not work at this time. I have recommended referral to psychiatry for further evaluation of her treatment. A return to work date will depend on that evaluation by the psychiatrist as well as Dr. Tylicki who is actively managing her pain issues.

(A.R. 661). Dr. Zuzick's letter concerns plaintiff's return to her former employment. (*Id.*; *see also* A.R. 660). The ALJ found that plaintiff was "unable to perform any past relevant work." (A.R. 64). Further, the ALJ considered the opinions of plaintiff's treating pain specialist at the Aurora Wilkinson Clinic, David Tylicki, M.D., and the psychiatrists who examined and treated plaintiff after December 24, 2007. (A.R. 61-64). The ALJ noted that neurosurgeon Eric Scott, M.D., found that plaintiff's physical impairments did not prevent her from doing light duty work. (A.R. 61; *see* A.R. 254, 416, 460-62, 467-69).

Plaintiff makes a vague allusion to her procedural right to good reasons for the weight given to Dr. Zuzick's medical opinions which is independent of her substantive right to receive disability benefits. (Plf. Brief at 16). Dr. Zuzick never offered an opinion that plaintiff had a combination of mental or physical impairments that was totally disabling. Further, the ALJ found that plaintiff had the severe impairments of "headaches, degenerative disc disease, depression, bipolar disorder and panic disorder without agoraphobia." (A.R. 58). There is no medical opinion

expressed by Dr. Zuzick which failed to receive appropriate weight. The court finds no violation of the treating physician rule[2] and that the ALJ considered all of the evidence presented.

    B.    Dr. Hauser

The ALJ did not discuss Dr. Hauser's opinions (A.R. 969-72), nor was there any requirement that he do so. Dr. Hauser was not a treating physician. *See Kornecky v. Commissioner*, 167 F. App'x at 507. Hauser saw plaintiff on two occasions: June 24, 2008 (A.R. 970-72) and July 15, 2008 (A.R. 969). Plaintiff was a "no show" for her July 15 and September 16, 2008 appointments. (A.R. 968-69). On June 24, 2008, plaintiff reported that she was employed as a cashier. She stated that she had been separated from her husband since November 2007 and "his drinking" was the reason for their separation. (A.R. 970). She stated that she was feeling more and more depressed. She did not disclose her criminal activity. Dr. Hauser gave plaintiff a current GAF score of 50, and 65 for the past year. (A.R. 972). On July 15, 2008, Dr. Hauser conducted a medication review. (A.R. 969).

GAF scores are a subjective rather than an objective assessment. The GAF scores Dr. Hauser provided were not entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x at 511. "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe

---

[2]Even assuming that a technical violation of plaintiff's procedural right had occurred, it was harmless. *See Francis v. Commissioner*, 414 F. App'x 802, 805 (6th Cir. 2011). The rule is not a "procrustean bed, requiring arbitrary conformity at all times." *Id.* The goal of the rule has been served. The focus of the ALJ's opinion was on the medical opinions expressed by physicians with the longest treatment relationships and the greatest expertise. Plaintiff never disclosed the true state of her affairs to Dr. Zuzick. They did not come to light until after she attempted suicide in 2008. (A.R. 61-64).

mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment. *Id*. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning."³ *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011). The court finds no basis for disturbing the Commissioner's decision.

**3.**

Plaintiff argues that the ALJ erred "by calculating a residual functional capacity for Ms. Heintz that did not reflect all of Ms. Heintz's limitations." (Plf. Brief at 17). She argues that the ALJ's RFC finding should have included restrictions on her ability to interact appropriately with the general public and to get along with co-workers because a state agency consultant's mental RFC assessment completed in 2007 included an opinion that plaintiff would have moderate limitations in these areas. (Plf. Brief at 18-19) (citing A.R. 663). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545; *Griffeth v. Commissioner*, 217 F. App'x 425,

---

³"Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.*, 211 F. App'x 411, 415 (6th Cir. 2006).

429 (6th Cir. 2007). RFC is an administrative finding of fact made by the ALJ on the record as a whole. The ALJ found that plaintiff retained the RFC for a restricted range of light work, "limited to simple, routine, repetitive and allowed off-task 5% of the time." (A.R. 60). The ALJ was not required to accept the consultant's opinion. 20 C.F.R. §§ 404.1527(d)(2), (3). The ALJ found that restrictions on interaction with the general public and co-workers were not warranted. In 2008, plaintiff was working as a cashier at "Pick N Save." (A.R. 32). The ALJ emphasized that plaintiff was "fired from a cashier position not because she was unable to do it but because she stole from her employer." (A.R. 61). "The claimant admitted that she was fired from her job for stealing gift cards . . . ." (A.R. 63). The ALJ's factual finding that plaintiff retained the RFC for a limited range of light work (A.R. 60) is supported by more than substantial evidence.

## Conclusion

For the reasons set forth herein, the Commissioner's decision will be affirmed.

Dated:  October 15, 2012            /s/  Joseph G. Scoville
                                    United States Magistrate Judge